WILLIAM DINNING *v.* STATE OF INDIANA.

[No. 870S191. Filed May 11, 1971. Rehearing denied August 3, 1971.]

*Charles W. Vincent,* of Terre Haute, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, *R. Michael Bruney,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged with first degree murder. Trial by jury resulted in a verdict of guilty as charged, after which the appellant was sentenced to the Indiana State Prison for life.

The record discloses the following facts:

In early September, 1969, the appellant had told his step-daughter that he was going to kill her mother (the decedent in this case). He also stated that he was going to burn the house down. On numerous occasions the appellant had made threats against his wife and had inflicted physical harm. The decedent owned a pistol which she kept at her daughter's house. However, on September 15, the day before the alleged killing, the decedent obtained the pistol from her daughter because the appellant had threatened to kill her. On the same day the appellant purchased a twelve gauge shotgun and several shells.

The next day, on September 16, 1969, the appellant drove to the house where the decedent resided with appellant's son and step-son. Appellant obtained a can of gasoline from a coal shed at the rear of the house, then cut the telephone wires leading to the home. Appellant then broke into the house. As the decedent fled from the appellant through the house, the appellant fired the shotgun striking and wounding the decedent. The decedent ran from the house but fell to the ground between her house and a neighbor's house.

Otis Williams, son of the decedent and step-son of the appellant, testified that when the appellant started breaking into the house the decedent awakened him and told him what was happening. He got out of bed and saw the appellant fire the first shot which struck his mother. He grabbed the barrel of the gun, took it away from the appellant and threw it out the back door. He continued to fight with the appellant through the house and out into the front yard where appellant was able to get away from Williams and ran around to the back of the house. Williams ran around the house in the opposite direction. The appellant recovered the shotgun, and Williams stood behind a tree. He could hear his mother calling to the neighbors. The neighbors, roused by the shouting and the shot, came from their house but were told by the appellant to go back inside and not call police. Williams testified that he then heard a second shot, after which the appellant ran to his car and drove away.

Apppellant first contends the trial court erred in denying his motion for a transcript of the testimony taken before the Grand Jury and the minutes of the Grand Jury, which motion was made prior to the start of the trial in anticipation of cross-examination and impeachment of witnesses. This Court has previously stated that a defendant has no right to inspection of the transcript of the evidence taken before the Grand Jury. *Mahoney* v. *State* (1964), 245 Ind. 581, 201 N. E. 2d 271, 3 Ind. Dec. 750. The proceedings before a Grand Jury are secret. *Burns Ind. Stat., 1956 Repl.,*

§ *9-816.* If a party desires certain testimony given before the Grand Jury, he must show good cause with particularity as to why he should have access to such testimony. *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873, 20 Ind. Dec. 164.

The appellant also had the ability to call a member of the Grand Jury to testify for the purpose of ascertaining whether testimony of the witness before the Grand Jury was consistent with evidence given by the witness before the court. *Burns Ind. Stat., 1956 Repl.,* § *9-817.* This he did not do. We hold the trial court did not err in refusing to grant appellant's motion for a transcript of the proceedings before the Grand Jury.

The appellant next contends the verdict was not supported by sufficient evidence and was, therefore, contrary to law. Appellant argues that there is a lack of evidence to support the necessary allegation of premeditated malice. On review this Court will consider only that evidence most favorable to the State, together with all reasonable inferences to be drawn therefrom. *Langley* v. *State* (1968), 250 Ind. 29, 232 N. E. 2d 611, 12 Ind. Dec. 419. From the evidence above recited, we hold that the jury had ample evidence before it to support the verdict of first degree murder. Premeditation is defined as an act of deliberation on a contemplated act. *Brewer* v. *State* (1969), 253 Ind. 154, 252 N. E. 2d 429, 19 Ind. Dec. 264. In view of the previous threats made by the appellant against the decedent and the manner in which the shooting occurred, it becomes obvious that there was ample evidence of premeditation. As to the proof of malice, it has been held that the intentional or deliberate use of a deadly weapon in a manner likely to cause death is sufficient to support a finding of malice so as to support a conviction of first degree murder. *Holsey* v. *State* (1970), 253 Ind. 437, 254 N. E. 2d 859, 20 Ind. Dec. 159.

The trial court is, therefore, affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., concurs with opinion.

## Concurring Opinion

DeBruler, J.—I concur in the majority wherein it holds that this trial court did not commit error in denying the defendant's pre-trial motion for production of grand jury testimony. However, for the sake of aiding in the continuity of the law presently governing discovery in the area of criminal law, I would point out that after his pre-trial motion was denied, the defendant did not seek to lay a proper foundation during trial and exercise his right to obtain available statements of trial witnesses made before the grand jury, afforded him by this Court in *Antrobus* v. *State* (1970), 253 Ind. 420, 254 N. E. 2d 873. Appellant in his brief cites the *Antrobus* case and *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536, and admits that neither of these cases affords him the right to pre-trial production of statements made before a grand jury, but argues that in light of these two cases, and the following quotation from *Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60, the trial court should have exercised its inherent power to implement the techniques of discovery applicable to civil proceedings, in criminal cases, since in his opinion it was necessary to providing the defendant with a full and fair hearing:

> "The purpose of the Bernard doctrine is to insure justice and fairness in criminal proceedings, and it is axiomatic that an accused is not justly and fairly tried when his counsel is compelled to maneuver in a factual vacuum. Nor is fairness and justice enhanced when convictions are gained through surprise, or by the prosecution misleading the defense."

I believe the trial court had the power to permit the pre-trial examination by defense counsel of grand jury testimony, upon the laying of an Antrobus-type foundation tailored to the pre-trial situation. However, the trial court decision not to exercise that power in this case does not constitute error.

Note.—Reported in 269 N. E. 2d 371.